STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                   FOURTH JUDICIAL DISTRICT

---

JULIE DALTON,                                   Court File No.:

      Plaintiff,

                                    **SUMMONS**

vs.

KARVONEN & SON, INC.,

      Defendant.

---

THIS SUMMONS IS DIRECTED TO KARVONEN & SON, INC.:

    1.     YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons.  Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court, and there may be no court file number on this Summons.

    2.     YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this Summons located at:

R. Bruce Carlson, Esq.
Ian Brown, Esq.
CARLSON BROWN
222 Broad Street
PO Box 242
Sewickley, PA 15143

Nicholas A. Colella, Esq.
LYNCH CARPENTER LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

**EXHIBIT 1**

Patrick W. Michenfelder, Esq.
Chad A. Throndset, Esq.
THRONDSET MICHENFELDER, LLC
One Central Avenue West, Suite 101
St. Michael, MN 55376

3.     YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.     YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.     LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.     ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to this Complaint even if you expect to use alternative means of resolving this dispute.

**EXHIBIT 1**

**CARLSON LYNCH, LLP**

February 3, 2022

/s/ R. Bruce Carlson
R. Bruce Carlson[1]
Ian Brown[2]
222 Broad Street
PO Box 242
Sewickley, PA 15143
Tel: (412) 322.9243
Email: bcarlson@carlsonbrownlaw.com
Email: ibrown@carlsonbrownlaw.com

**LYNCH CARPTENTER LLP**

Nicholas A. Colella[3]
1133 Penn Avenue, 5th Floor
Pittsburg, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Email: nickc@lcllp.com

**THRONDSET MICHENFELDER, LLC**

/s/Patrick W. Michenfelder
Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#261191)
Cornerstone Building
One Central Avenue West, Suite 101
St. Michael, MN 55376
Tel: (763) 515-6110
Email: pat@throndsetlaw.com
Email: chad@throndsetlaw.com

*Attorneys for Plaintiff*

---

[1] Pro Hac Vice forthcoming.
[2] Pro Hac Vice forthcoming.
[3] Pro Hac Vice forthcoming.

**EXHIBIT 1**

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                  FOURTH JUDICIAL DISTRICT

---

JULIE DALTON,

                                          Court File No.:

           Plaintiff,                    **COMPLAINT**

vs.

KARVONEN & SON, INC.,

           Defendant.

---

Plaintiff, by and through her undersigned counsel, brings this action against Karvonen & Son, Inc., (Defendant) for violations of the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq.* (the "ADA") and its implementing regulations. Plaintiff also asserts a companion cause of action under the Minnesota Human Rights Act. Plaintiff seeks a permanent injunction requiring a change in Defendant's corporate policies to cause its online store to become, and remain, accessible to individuals with visual disabilities; a civil penalty payable to the state of Minnesota pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4; damages, and a damage multiplier pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4; and nominal damages in accordance with *Uzuebunam et. al. v. Presczewskie et. al.*, 592 U.S. _____ (2021). In support thereof, Plaintiff respectfully asserts as follows:

**EXHIBIT 1**

**INTRODUCTION**

1.      In a September 25, 2018 letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the Website they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' Website over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.

*See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018) (available at https://www.adatitleiii.com/wp-content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf) (last accessed November 3, 2021).

2.      Plaintiff is legally blind and is completely reliant upon screen reader technology, such as VoiceOver, to navigate the Internet.

3.      Screen reader "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017) (J. Weinstein).

> The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the

2

**EXHIBIT 1**

text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.

The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard.

*Id.*; *See also* American Federation for the Blind, *Screen Readers*, *available at* https://www.afb.org/blindness-and-low-vision/using-technology/assistive-technology-products/screen-readers (last accessed November 3, 2021) (discussing screen readers and how they work).

4.     Defendant is a furniture and appliance store whose website allows consumers to research and order appliances and furniture for home delivery.

5.     Consumers may research and purchase Defendant's products and services at https://www.karvonens.com/ (the "Website"), which Defendant owns, operates, and controls.

6.     Defendant is responsible for the policies, practices, and procedures concerning the Website's development and maintenance.

7.     Unfortunately, Defendant denies approximately 8.1 million Americans who have difficulty seeing access to its online store because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world. *See* Press Release, United States Census Bureau, Nearly 1 in 5 People Have a Disability in the U.S., Census Bureau Reports *Report Released to Coincide with*

**EXHIBIT 1**

*22nd   Anniversary   of   the   ADA*   (Jul.   25,   2012),   *available   at*

https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html   (last

accessed November 3, 2021) ("About 8.1 million people had difficulty seeing, including

2.0 million who were blind or unable to see.").

8.      Plaintiff brings this civil rights action against Defendant to enforce Title III

of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which

requires, among other things, that a public accommodation (1) not deny persons with

disabilities the benefits of its services, facilities, privileges and advantages; (2) provide

such persons with benefits that are equal to those provided to nondisabled persons;

(3) provide auxiliary aids and services—including electronic services for use with a

computer screen reading program—where necessary to ensure effective communication

with individuals with a visual disability, and to ensure that such persons are not excluded,

denied services, segregated or otherwise treated differently than sighted individuals; and

(4) utilize administrative methods, practices, and policies that provide persons with

disabilities equal access to online content.

9.      By failing to make its Website available in a manner compatible with

computer screen reader programs, Defendant, a public accommodation subject to Title III,

deprives individuals who are partially sighted, visually impaired, or totally blind the

benefits of its online goods, content, and services—all benefits it affords nondisabled

individuals—thereby increasing the sense of isolation and stigma among these Americans

that Title III was meant to redress.

**EXHIBIT 1**

10.     Because Defendant's Website is not and has never been accessible, and because upon information and belief Defendant does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring that:

| Compl. ¶ | Relief Requested | Defendant's Deadline to notify Plaintiff's counsel of completion |
|---|---|---|
| 10(a) | Defendant retain a qualified consultant acceptable to Plaintiff ("Approved Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including all third party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by individuals with vision related disabilities. | 30-days of Court's Order |
| 10(b) | Defendant work with the Approved Accessibility Consultant to ensure that all employees involved in website development be given accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages. | 180-days of Court's Order and every 180-days thereafter until the Court orders otherwise |
| 10(c) | Defendant work with the Approved Accessibility Consultant to perform an automated accessibility audit on at least a quarterly basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis. | 90-days of Court's Order and every 90-days thereafter until the Court orders otherwise |

**EXHIBIT 1**

| | | |
|---|---|---|
| 10(d) | Defendant work with the Approved Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools. | 90-days of the Court's Order and every 90-days thereafter until the Court orders otherwise |
| 10(e) | Defendant incorporate all of the Approved Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations. | 60-days of receiving recommendations until the Court orders otherwise |
| 10(f) | Defendant work with the Approved Accessibility Consultant to create an Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll free phone number to report accessibility-related problems. | 60-days of the Court's Order |
| 10(g) | Defendant directly link from the header on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website. | 60-days of the Court's Order |
| 10(h) | Defendant accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy. | 60-days of the Court's Order |
| 10(i) | Defendant provide a notice, prominently and directly linked from the header on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide | 60-days of the Court's Order |

**EXHIBIT 1**

| | | |
|---|---|---|
| | feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy. | |
| 10(j) | Defendant provide a copy of the Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website. | 60-days of the Court's Order |
| 10(k) | Defendant train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance. | 180-days of Court's Order |
| 10(l) | Defendant modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology | 180-days of Court's Order |
| 10(m) | Plaintiff, her counsel, and its experts monitor the Website for up to two (2) years after the Approved Accessibility Consultant validates the Website is free of accessibility errors/violations to ensure Defendant have adopted and implemented adequate accessibility policies. To this end, Plaintiff, through her counsel and its experts, shall be entitled to consult with the Approved Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Approved Accessibility Consultant provides Defendant. | Until the Court orders otherwise |

7

**EXHIBIT 1**

11.    Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. Jonathan Lazur *et al.*, *Ensuring Digital Accessibility Through Process and Policy* 140 (2015). As one leading commentator notes,

> The most significant problem is maintaining the accessibility of a large commercial site. Without policies, procedures and metrics—such as testing a release for accessibility before posting to the website and training in accessible design (so that accessibility is part of the design process the way, say, cybersecurity is)—the site's status as accessible will be temporary at best.

*Fighting for Accessible Website under the ADA: Daniel Goldstein, Brown Goldstein Levy, Baltimore*, Bloomberg BNA, Jan. 13, 2016, ISSN 1098-5190 (reproduced with permission from Electronic Commerce & Law Report, 21 ECLR, 2, 1/13/16).

12.    To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

> [I]f you have planned to redesign or add a certain segment to your site, then make it accessible from the start. It's far cheaper to plan for an elevator than to decide to add one once your 30-story building is complete. Or if you are re-branding, consider using templates that will ensure accessibility. Make sure you have policies, procedures and metrics in place so that you know if you are maintaining accessibility and can identify why, if you are not. Most

**EXHIBIT 1**

of all, consult disabled consumers or a consumer organization before deciding what you are going to do, and have consumers actually test the changes.

Something you imagine you may need to do, you may not need to do at all or may be able to do much cheaper. Something you hadn't thought to do may be critical to accessibility. And, of course, if you work with the disability community, they will spread the word that this is no longer a site to be avoided, but to be used.

*Id.* at 3.

## JURISDICTION AND VENUE

13.    Defendant participates in the State's economic life by clearly performing business over the Internet. Through its Website, Defendant enters into contracts for the sale of its products with residents of Minnesota. These online sales contracts involve, and indeed require, Defendant's knowing and repeated transmission of computer files over the Internet. *See Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) *clarified by* Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *see also Access Now Inc. v. Otter Products, LLC*, 280 F.Supp.3d 287 (D. Mass. Dec. 4, 2017) (same); *Access Now, Inc. v. Sportswear, Inc.*, 298 F.Supp.3d 296 (D. Mass. 2018) (same).

14.    As described in additional detail below, Plaintiff was injured when she attempted to access Defendant's Website from this District, but encountered barriers that denied her full and equal access to Defendant's online goods, content, and services.

**EXHIBIT 1**

15.    This is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

16.    Plaintiff is and, at all times relevant hereto, has been a resident of this District. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

17.    Defendant is a Minnesota corporation with its principal place of business located at 151 W. Main Street, Perham, MN 56573.

## FACTS APPLICABLE TO ALL CLAIMS

18.    While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

### DEFENDANT'S ONLINE CONTENT

19.    Defendant's Website allows consumers to research and purchase Defendant's products from the comfort and convenience of their own homes, and arrange for home delivery.

20.    Defendant is responsible for the policies, practices, and procedures concerning the Website's development and maintenance.

10

**EXHIBIT 1**

## HARM TO PLAINTIFF

21.     Plaintiff attempted to access the Website from this District using Microsoft Text-to-Speech (TTS) on her personal computer. "TTS is the ability of the operating system to play back printed text as spoken words. An internal driver, called a TTS engine, recognizes the text and using a synthesized voice chosen from several pre-generated voices, speaks the written text. A TTS engine is installed with the operating system." *See* Microsoft, *How to configure and use Text-to-Speech in Windows XP and in Windows Vista,* available at https://support.microsoft.com/en-us/topic/how-to-configure-and-use-text-to-speech-in-windows-xp-and-in-windows-vista-f6970cc6-07b7-9130-efdc-66385d38a4e1#bkmk_1 (last accessed November 5, 2021).

Unfortunately, as a result of visiting Defendant's Website, and from investigations performed on her behalf, Plaintiff found Defendant's Website to be unusable due to various barriers that deny her full and equal access to Defendant's online store. For example,

      a. The header of the website does not provide a proper description of the Defendant's telephone contact information;

      b. When browsing multiple products, the regular price, sale price, color and size options are inaccessible;

      c. Colors of products are mislabeled once chosen by a costumer;

      d. Once a product is placed inside the shopping cart the product's price, subtotal, and grand total are not accessible;

      e. Store hours of operation and address are inaccessible; and

**EXHIBIT 1**

      f.  Text throughout the website is inaccessible if using a keyboard,

resulting in skipped information.

22.    These barriers, and others, deny Plaintiff full and equal access to all of the

services the Website offers, and now deter her from attempting to use the Website. Still,

Plaintiff would like to, and intends to, attempt to access the Website in the future to research

the products and services the Website offers, or to test the Website for compliance with the

ADA.

23.    If the Website was accessible, *i.e.* if Defendant removed the access barriers

described above, Plaintiff could independently research and purchase Defendant's products

and access its other online content and services.

24.    Though Defendant may have centralized policies regarding the maintenance

and operation of its Website, Defendant has never had a plan or policy that is reasonably

calculated to make its Website fully accessible to, and independently usable by, individuals

with vision related disabilities. As a result, the complained of access barriers are permanent

in nature and likely to persist.

25.    The law requires that Defendant reasonably accommodate Plaintiff's

disabilities by removing these existing access barriers. Removal of the barriers identified

above is readily achievable and may be carried out without much difficulty or expense.

26.    Plaintiff has been, and in the absence of an injunction will continue to be,

injured by Defendant's failure to provide its online content and services in a manner that

is compatible with screen reader technology.

**EXHIBIT 1**

**DEFENDANT'S KNOWLEDGE OF ONLINE ACCESSIBILITY**
**REQUIREMENTS**

27.    Defendant has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

28.    Indeed, the "Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' Website over 20 years ago." As described above, on September 25, 2018, Assistant Attorney General Stephen E. Boyd confirmed nothing about the ADA, nor the Department's enforcement of it, has changed this interpretation.

29.    More recently, the United States Court of Appeals for the Ninth Circuit confirmed the ADA applies to Website and mobile applications, equally. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019).

**THE PARTIES HAVE NO ADMINISTRATIVE REMEDIES TO PURSUE**

30.    There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

31.    While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

32.    Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective

**EXHIBIT 1**

communication, and courts routinely decide these types of effective communication matters.

33.     Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Defendant offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

## SUBSTANTIVE VIOLATIONS

### Title III of the ADA, 42 U.S.C. § 12181, *et seq.*

34.     The assertions contained in the previous paragraphs are incorporated by reference.

35.     Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Suchenko v. ECCO USA, Inc.,* 2018 WL 3933514, *3 (W.D. Pa. Aug. 16, 2018) ("Simply put, Defendant in the instant case, like other corporate defendants in *Gniewkowski* and *Suchenko*, purportedly owns, operates, and/or controls the property upon which the alleged discrimination has taken place—i.e., its website. Therefore, Plaintiff in this case has a nexus to the place of public accommodation and thus may claim the protections of Title III.").

36.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Defendant does not provide Plaintiff with full and equal access to its Website, it has violated the ADA.

**EXHIBIT 1**

37.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.*

38.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

39.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

40.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances. [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

15

**EXHIBIT 1**

41.     By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on its Website;

(b)     affording individuals with visual disabilities access to its Website that are not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)     denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)     failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

42.     Defendant has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of the Website, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

43.     Defendant has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available

16

**EXHIBIT 1**

without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

44.     Making its online goods, content, and services compatible with screen readers does not change the content of Defendant's Website nor result in making the Website different, but enables individuals with visual disabilities to access the Website Defendant already provide.

45.     Defendant's ongoing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

46.     Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

47.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**EXHIBIT 1**

**The Minnesota Human Rights Act, Minn. Stat. Chapter 363A**

49.      Minn. Stat. § 363A.11 provides: It is an unfair discriminatory practice: (1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of […] disability […]; or (2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

50.      Under the general prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

51.      Defendant has engaged in unfair discriminatory practices against Plaintiff and others in that it has failed to ensure that the Defendant's website and online content is fully accessible to persons with disabilities on an independent and equal basis in violation of MHRA, 363A.11.

52.      Plaintiff has been denied full and equal access to the Website and has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations offered therein on a full, independent and equal basis.

53.      Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm.

18

**EXHIBIT 1**

54.     This Court has authority under Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3-4, to issue an order directing Defendant to cease and desist from their unfair discriminatory practices and to take affirmative action to make its Website readily accessible to and independently usable by individuals with disabilities.

55.     The Court has authority under Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4 to order Defendant to pay a civil penalty to the state of Minnesota.

56.     The Court has authority under Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4 to award damages, and a damage multiplier pursuant.

57.     Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and are entitled to recover reasonable attorneys' fees from Defendant as part of the costs, pursuant to Minn. Stat. 363A.33, Subd.7.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

(A)     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA and the Minnesota Human Rights Act, in that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

(B)     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) and Minn. Stat. 363A.33, Subd. 6, and Minn Stat. 363A.29, Subd. 3 which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website

19

**EXHIBIT 1**

is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 10 above.

(C)     Payment of costs of suit;

(D)     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; and including costs of monitoring Defendant's compliance with the judgment. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."); *see also Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11);

(E)     That the Court order Defendant to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

(F)     An award damages, and a damage multiplier pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4

(G)     Payment of nominal damages in accordance with *Uzuebunam et. al. v. Presczewskie et. al.*, 592 U.S. _____ (2021).

(H)     An Order retaining jurisdiction over this case until Defendant have complied with the Court's Orders; and

20

**EXHIBIT 1**

(I)     Such other relief the Court deems just, equitable and appropriate.


Dated: February 3, 2022            Respectfully Submitted,

                                   */s/ R. Bruce Carlson*
                                   R. Bruce Carlson
                                   Ian M. Brown
                                   **CARLSON BROWN**
                                   222 Broad Street
                                   PO Box 242
                                   Sewickley, PA 15143
                                   bcarlson@carlsonbrownlaw.com
                                   ibrown@carlsonbrownlaw.com
                                   Phone: (412) 322.9243

                                   Nicholas A. Colella
                                   **LYNCH CARPENTER LLP**
                                   1133 Penn Avenue, 5th Floor
                                   Pittsburgh, PA 15222
                                   nickc@lcllp.com
                                   Tel: 412-322-9243
                                   Fax: 412-231-0246

                                   *Counsel for Plaintiff*



                                   **THRONDSET MICHENFELDER, LLC**

                                   /s/Patrick W. Michenfelder
                                   Patrick W. Michenfelder (#024207X)
                                   chad@throndsetlaw.com (#261191)
                                   Cornerstone Building
                                   One Central Avenue West, Suite 101
                                   St. Michael, MN 55376
                                   Tel: (763) 515-6110
                                   Fax: (763) 226-2515
                                   Email: pat@throndsetlaw.com

                                   *Counsel for Plaintiff*

21

**EXHIBIT 1**